(Hamilton County Common Pleas.)
1901.

## STATE OF OHIO v. BENNETT CARTER.

(1.) The clerk of a village, by virtue of his office, is also the auditor of the village, and as such has no right to collect village assessments or handle the money of the village.

(2.) Although the village council may, under sec. 2693, R. S., pass an ordinance providing for the appointment and control of the necessary officers to levy and collect taxes within the corporation, it can not appoint the village clerk, who is *ex-officio* auditor, to collect assessments because such duties are incompatible with the nature of the office of auditor, who is a check upon the village treasurer.

(3.) The word "charged" as used in sec. 6841, R. S., which provides that, "whoever being *charged* with the collection, etc., of public money," may be guilty of embezzling it, means enjoined by law with doing all necessary acts to collect the money, even to enforcing payment by suit; and it does not mean merely an authority given to collect the money with no power to enforce the collection, such as was given to the village clerk in this case.

(4.) A defendant indicted for embezzle-

ment of public funds while holding a public office is not estopped from denying that the money taken came into his hands by virtue of his office, but the allegation of the indictment to that effect is a material one and must be proved beyond a reasonable doubt like any other material allegation.

LITTLEFORD, J.

The defendant, Bennett Carter, was convicted of the embezzlement of certain public money under an indictment containing two counts.

The first count, which was drawn under section 6841, Revised Statutes, alleges that the defendant, being the clerk of the village of Madisonville, was *charged* with the collection, receipt, safe-keeping and transfer of certain assessments by virtue of an ordinance passed by the village council, and that he embezzled certain of these funds, "which said monies had then and there come into the possession and control of him, said Bennett Carter, by virtue of his, said Bennett Carter's, office as such clerk as aforesaid and in his discharge of the duties thereof as aforesaid." The clause in the ordinance which it is claimed gave the defendant the right to receive this money reads as follows:

"Section 2. That the owners of the several lots and lands upon each front foot of which the sums aforesaid are assessed shall pay the amount of money by them severally due in that behalf to the clerk of the village on or before the thirteenth day following the final passage of this ordinance; and in default of such payment, the clerk shall forthwith certify all unpaid assessments to the county auditor, to be by him placed on the tax duplicate and collected by law."

The section of the statutes referred to (section 6841 Revised Statutes), under which this indictment was drawn, provides as follows: "Whoever, being charged with the collection, receipt, safe-keeping, transfer or disbursement of public money, or any part thereof, belonging to the state, or to any county, township, municipal corporation or board of education," may be guilty of embezzlement of such funds.

The second count of the indictment, which was drawn under the latter part of section 6842, Revised Statutes, alleges that the defendant, having been elected and appointed to an office of public trust, to-wit, that of clerk of the village of Madisonville, embezzled certain money belonging to the said village, which said money had then and there come into the possession and care of him, the said Bennett Carter, by virtue and under color of his said office, while discharging or pretending to discharge the duties therof. That part of section

6842, Revised Statutes, under which the second count was drawn, reads as follows:

"An officer elected or appointed to an office of public trust or profit in this state, and an agent, clerk, servant or employe of such officers, who embezzles or converts to his own use or conceals with such intent anything of value that shall come into his possession by virtue of his office or employment, is guilty of embezzlement, and shall be punished as for the larceny of the thing embezzled."

Both counts, as appears from the above statement, charge that the money had come into the possession of the defendant *by virtue of his office*—the first because an ordinance had *charged* him with the collection of it, and the second, because as clerk of the village he had inherent power to collect it.

The question presented by the second count will be considered first—that is, has the clerk of a village inherent power to collect assessments under the laws of this state?

The indictment avers that Madisonville is a village. The officers of a village are provided for in section 1706, Revised Statutes, and are to consist of mayor, clerk, sealer of weights and measures, treasurer, marshal, solicitor and street commissioner.

The power and duties of these officials are set forth in the various sections, and then section 1712, Revised Statutes, provides that "officers whose powers and duties are not defined in this title shall perform such duties and exercise such powers as may be prescribed by ordinance." Thus it appears that we must look for the powers and duties of a village clerk in the statutes, and he can have no other powers unless the same have been conferred upon him by ordinance. The second count in this indictment does not allege that the defendant in this case had any power conferred upon him by ordinance, and his powers and duties, so far as this count is concerned, are therefore limited within the confines of the various sections of the statutes which set forth the powers and duties of the village clerk. These duties are as follows:

He shall make a detailed statement of the receipts and expenditures of the corporation annually (section 1756); he shall post this statement at the voting precincts or publish it in a newspaper (section 1757); he shall annually report to the auditor of state the expenses of the corporation for schools, police, streets, etc. (section 1758); he shall certify to the court of common pleas the election of certain officers of the corporation (section 1759); he shall perform the duties of auditor under the directions of the council in corporations where there is no city auditor, and shall

have charge of the records of the corporation (section 1762); he shall have a seal which he must affix to all transcripts, etc., (section 1764)) he shall, whenever presented with a receipt from a contractor in whose favor an assessment is confirmed,. record the payment. of the assessment on the margin of the record, so as to show that the lien was released, (section 2285); he shall certify any unpaid assessment or tax to the county auditor to be placed upon the tax list by that official (section 2295); shall furnish the township treasurer a list of persons given to him by the county auditor, who are entitled to assistance from the Soldiers' Relief Commission (section 3107-53); he shall, before any contract involving the expenditure of money shall be entered into by the corporation, first certify that the money required for the contract is in the treasury to the credit of the fund from which it is to be drawn (section 2702); he shall draw a warrant for any claim against the municipal corporation, and no such claim shall be paid by the treasurer except upon his warrant (section 2690); he shall have the custody of, and shall immediately record, all the bonds given by the officers of the corporation (section 1739), and when council requires a new bond of any official, the clerk shall serve him with a written notice of the ˙resolution of council (section 1741).

The above enumeration of the sections which define the duties of a village clerk is sufficient to show that his powers and duties are clearly defined, and nowhere in the statutes is there any suggestion of an idea that he is clothed "by virtue of his office" with the important duty of collecting public money, either in the form of assessments or in any other form.

The second count of this indictment is, therefore, fatally defective, in my opinion, because the facts stated in the indictment do not constitute an offense.

Coming now to the questions presented by the first count, the first is, can the village council pass an ordinance so as to charge the village clerk with the collection of assessments, or is such an ordinance of no force and effect in giving him the power? And the second is, does the ordinance set forth in the indictment *charge* the clerk with that duty in the sense that the word "charge" is. used in the statutes?

As to the first question, I am of the opinion that the council can not, by ordinance, impose upon the clerk the duty of collecting assessments, because the village clerk is, by virtue of his office, the village auditor under section 1762 Revised Statutes, quoted above, and it is inconsistent with the nature of the office of

auditor to perform such duties. An auditor must not handle public funds, but merely keep· an account of them so as to be a check upon the treasurer in the collection and disbursement of the public money by the treasurer. The section referred to, section 1762, Revised Statutes, provides that the clerk of a village, besides acting as auditor, shall have such other duties as the council may prescribe, "pertaining. to his office;" but the collection of assessments does not pertain to the office of auditor, and is incompatible with it, and hence can not be made one of the duties of the village clerk by the council of the corporation. I have two reasons for thinking so.

In the first place, it is decided in *State* against *Newton,* 26 Ohio St., 265, that a county auditor is not an officer charged with the possession and custody of money belonging to the state, upon the principle that "the county auditor is placed at the door of the county treasurer, and stands as a watchman or guard upon it, without whose knowledge and consent, except in a few designated instances, in which the auditor of state acts, no public money can legally either get into or out of the county treasury;" and if this principle is sound in· its application to county auditors, it is just as sound when applied to village auditors. In other words, it is against public policy to allow the same man to keep the public accounts· and have the public money in his possession, whether he be the official of a small or large public community. As indicating that this is the policy of the law, it may be stated that all statutes passed creating auditors for various municipalities throughout the state prescribe their duties without in any case suffering them to have the custody of the public money. Thus section 1765a enumerates the duties of the auditor of Cincinnati; sections 1545-54 to 62 state the duties of the auditor of Cleveland; sections 1545-125 to 133 gives the duties of the director of accounts in Columbus, and so· on, there being no case where an auditor is. entrusted with the handling of public funds.

In the next place section 2693, Revised Statutes, provides that when a village elects to· levy and collect taxes within the corporation, the officers appointed by the village council. to carry the same into effect shall be under all the restrictions of county auditors and county treasurers; the intention of this section being, in my opinion, to make the duties of the village auditor (called clerk) and the village· treasurer as distinct from each other as are those of the corresponding county officials. The duties of the county auditor and county treasurer, besides being held to be incompatible by nature in the case of *State* v. *Newton,*.

26 Ohio St., 265, just cited, are made incompatible by two sections of the statutes, one of which, section 18 Revised Statutes, provides that no person shall at the same time hold the offices of county auditor and county treasurer, and the other of which, section 1020, Revised Statutes, provides that no county treasurer shall be eligible to the office of county auditor. These restrictions, which hedge the county auditor about, also limit the powers of a village clerk, as I understand section 2693, Revised Statutes.

For these reasons, I am of the opinion that the collection of assessments was a duty incompatible with the nature of the office of clerk in the village of Madisonville; and I am further, of the opinion that, such being the case, the village council had no power to pass an ordinance conferring such a duty upon the village clerk. I base the latter conclusion upon the reason that if the statutes deny to a village clerk the right to handle public funds, he can not do so by permission from the council, *because the powers of the village council are limited strictly to those which are expressly granted by statute*, and "doubtful claims to power are to be resolved against it," according to *Bloom* v. *Xenia*, 32 Ohio St., 461, 465.

This principle was recognized also in *Lillard* v. *Ampt*, 4 N. P., 305, where the board of legislation of Cincinnati attempted to confer a power upon the city clerk which he had no right to exercise under the statute. If this be the law, then in this case, while the village council of Madisonville has the right under section 2693 cited *supra*, to authorize some one to collect assessments, the village auditor, the nature of whose office forbids him to handle public funds, is not one who may be selected for that purpose.

As to the second question raised by the first count of the indictment—does the oidinance set forth *charge* the defendant with the collection, receipt and safe-keeping of the assessments therein referred to? —I am of the opinion that the ordinance does not *charge* him with these duties, according to the meaning of the word charge as a legal technic, because it does not (and could not) empower him to *enforce* the payment of these assessments. I think the ordinance only authorized the clerk to receive the assessments provided they were paid to him by the lot owners. Section 2 of the ordinance quoted *supra* provides that the owners of the lots assessed shall pay the assessments to the clerk, and in default of such payment the clerk shall forthwith certify all unpaid assessments to the county auditor, to be by him placed on the tax duplicate and collected by law.

· The meaning of the word *charge* in the section under which this count of the indictment was drawn (section 6841, Revised Statutes) has already been adjudicated upon in the case of the *State* v. *Myers*, 56 Ohio St., 340, 349, where it is said that conferring authority upon an official to do an act "falls short of *charging*" him with the performance of it. The decision continues:

"The difference is the substantial one between an authority to do an act and enjoining the performance of the act as a duty. That difference is plainly observable under our legislation in the relations of a treasurer and his deputy to each other and to the public. The former is charged by law with the duty of collecting and disbursing the public moneys and the doing of all acts necessary thereto, as required by law; but the latter is not so charged with the performance of those duties."

The acts required by law which must be done by a county treasurer as necessary to the collection of taxes and assessments are set forth in section 1104, Revised Statutes, which provides that when the same are not paid within the time prescribed by law, the treasurer shall bring a civil action, in his own name as treasurer, for the sale of the premises, shall collect the amount due as taxes and distribute the remainder as may be just, and shall permit the owner to redeem the property upon certain conditions. In short, the county treasurer is compelled by law to *enforce* the payment of taxes and assessments, and this is what I understand is meant when it is said that he is charged with their collection.

Now, has the village clerk any power to enforce the payment of assessments under this ordinance? Under section 2695, assessments such as the defendant was authorized to collect, are to be certified by the village clerk, when delinquent, to the county auditor, who shall place htem upon the tax list, and the county treasurer shall collect them by legal proceedings. The village clerk has no other recourse in case any lot owner refuses to pay an assessment. He can not 'enforce the payment thereof by an action at law, nor does this ordinance give him any power additional to that given by this section 2695. For this reason he is in the same situation as the deputy treasurer referred to in *State* v. *Myers*, 56· Ohio St., 340, 349, cited *supra*, and therefore can not be said to be charged with the collection, etc., of the unpaid assessments by this ordinance, according to my understanding of the meaning of the word "charged".

The first count in the indictment is, therefore, also fatally defective, it appears to me, for the reasons given.

Counsel for the state maintain that a village clerk is no longer *ex-officio* auditor because section 1765, Revised Statutes, which was passed in the same act with section 1762, and, which outlined the duties of auditors in general, was afterwards amended so as to apply only to the auditors of certain cities, and that this erasing from the statutes of a section where the duties of a village auditor were outlined about as they are in section 1762, had the effect of repealing the following part of section 1762, Revised Statutes: "In corporations in which there is no city auditor" (as villages for instance), "the clerk shall perform the duties of auditor, under the direction of the council." In other words, the claim is that a part of a statute which creates the office of village auditor is repealed and the office abolished because another statute, which defined the duties of a village auditor, just about as they are defined in section 1762, is repealed. No authority is cited to sustain the view that this is a repeal by implication, and in the absence of authority, I could not take that view of it.

It is further maintained by counsel for the state that the defendant signed the receipts for the money as "Clerk," and is, therefore, estopped to deny his authority to receive it, and some authorities are cited in support of this view.

The first case cited, *Denton* v. *State*, 77 Md., 527, does not assert this principle in the syllabi or the text; and while it does assert that to constitute embezzlement in Maryland, it is not necessary to prove that the money was received by the defendant "by virtue of his employment," it also says that this is because of the "terms of our statute." It will hardly be contended that in Ohio this phrase, or its equivalent, which is inserted into every indictment for embezzlement, is surplusage and need not be proved.

*McLain's Crim. Law*, section 648, which is next cited, states that the funds must have come into the defendant's possession "by virtue of his office"; but this is not the principle for which the attorneys for the state are contending, and I do not find anything in the section which refers to the theory, in support of which the section is cited.

*State* v. *Spaulding*, 25 Kan., 1, the next citation, holds that a clerk, who had for a long time been accustomed to receive certain license money with the knowledge of the authorities, was estopped from denying, when tried for embezzlement of the city's money, that the money was the property of the city. This is the decision stated in the syllabus, and while it is somewhat analagous, the principle contended for, that an official is estopped from denying

that money received came into his hands by virtue of his office, still it is not the same principle, nor do the citations upon which the court bases its decision in that case assert anything more than the syllabus of the case decides, except one—2 *Bishop's Crim. Law*, section 367, (which is the next authority, by the way, cited in the brief for the state, and is section 364 in the 8th edition)—and that author really only asks why it should not be the law, saying frankly that his theory "is not quite in accord with the adjudications," and giving no cases where it was upheld. In reference to this decision in 24 Kas., it might further be pointed out that the prosecution in that case was under a statute which provides that "if any officer, agent, clerk, or servant of any incorporation or, *any person employed in such capacity*," so that the decision in that case is justified by the statute, which was clearly intended to cover just such cases. There are no such words in our statute.

Some authorities are also cited by counsel for the state in support of the proposition that an officer who has assumed the duties of an office can not dispute the validity of his appointment or election as a justification or defense in a criminal prosecution against him; but as the defendant in this case does not deny the validity of his appointment or election (both are alleged in the indictment) to the office of clerk, and only denies that as clerk he had a legal right to collect assessments, the authorities cited need not be discussed here.

I do not believe that there is any authority which holds that a public officer who is indicted for receiving public money by virtue of his office, and whose office is of such a nature that the law denies him the right to handle public funds, is estopped from the denial of that right when the law itself makes a denial for him. It may be that some authorties hold that a defendant is estopped from denying that he acted in the *capacity* of agent, employe or officer when he did so act; and this is the principle which Mr.Bishop says ought to be the law. But that author does not go so far as to say that when the defendant admits he acted in a certain capacity (as the defendant does here), he ought to be estopped from denying that one in that capacity had authority to receive money. In the case of *State* v. *Myers*, 56 Ohio St., 340, referred to above ,the defendant admitted that he acted in the capacity of deputy county treasurer, but denied that he had the authority, as such, to receive money. The Supreme Court of Ohio in that case held that he might make such a defense, and sets at rest in this state, it seems to me, the question whether a defendant has the right to make a defense of that kind. Such a defense is common in Ohio; an in-

dictment for embezzlement which did not allege that the defendant came into the possession of the money by virtue of his office or employment, would not be good, because all the sections of the statutes defining embezzlement say, in one form or another, that he must have so come into possession of the money; and it is a rule of statutory construction that the words of a criminal statute, taken against a defendant, must be construed strictly, so that this averment must be made in the indictment. If it *must* be.made, it is material; and if it is material, it must be proved. I think, therefore, that when a defendant is indicted for the embezzlement of funds received by him as a public official, he is not estopped from denying that, as such official, he had any legal authority to collect public funds.

Another point made by the attorneys for the state is that even if it be conceded that the defendant was both auditor and clerk of the village, still the signed receipts show that he received the money as clerk; and although the auditor may have no legal right to handle the public money, there is nothing to prevent the clerk from being clothed with that power by council; so that, as the defendant in this case held both offices, it was possible for him to receive money by virtue of his office as clerk, which as auditor, the law forbade him to touch. I can not conceive of the same individual combining two offices in his own person in such a way that he has the legal right to do a thing, and at the same time is prohibited by law from doing it; nor can I understand how the village auditor and clerk can divest himself of the office of auditor at any time when he wishes to do an act which the law permits him to do as clerk, but forbids him to do as auditor. It seems to me he is both auditor and clerk at all times, and can not put off either office when he sees fit, any more than he might divest himself of both for a certain period, if he so wished. As long as he holds two offices, he is bound by the restrictions which appertain to each.

For the reasons given, the motion in arrest of judgment will be granted, and the defendant remanded for further proceedings.

*Harry M. Hochheimer,* Prosecuting attorney. for the state.

*Norwood J. Utter* and *Charles E. Tenney,* for Carter.